OAKLAWN JOCKEY CLUB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8796. Promulgated May 28, 1947.

*Stanley S. Waite, Esq.*, and *Fred L. Kuhlmann, Esq.*, for the petitioner.

*Lester M. Ponder, Esq.*, for the respondent.

1130

**OPINION.**

ARUNDELL, *Judge*: Essentially, the question here is whether the abnormality is one of kind or only of degree. In the computation of excess profits credit on the average income method, section 711(b) of the Internal Revenue Code provides for certain adjustments to the income of the base period years 1936 through 1939. Subparagraph (J) of section 711(b)(1)[1] provides for the elimination and consequent restoration to base period income of certain abnormal deductions. Part (i) of subparagraph (J) "disallows" *in toto* deductions of the base period which were abnormal by class. Part (ii) "disallows," in the case of deductions abnormal in amount, the excess over 125 per cent of the prior four-year average. The parties here have stipulated that any abnormality or excess, whether by class or in amount, was not a consequence of an increase in income or a decrease in other deductions during petitioner's base period or of a change at any time in the type,

---

[1] SEC. 711. EXCESS PROFITS NET INCOME.

      *       *       *       *       *       *

  (b) TAXABLE YEARS IN BASE PERIOD.—

  (1) GENERAL RULE AND ADJUSTMENTS.—The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the special-class net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made * * *

      *       ,       *       *       *       *

  (J) Abnormal Deductions.—Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions—

  (i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and

  (ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.

manner of operation, size, or condition of petitioner's business. Accordingly, no question arises here as to the application of subparagraph (K) (ii) of section 711(b) (1).

Petitioner contends that interest payments in the amount of $26,279.85 in 1937, and $55,000 in 1938, were abnormal by class, and should be "disallowed" *in toto* under subparagraph (J) (i), because they related to indebtedness incurred by petitioner to cover its net losses during the period when petitioner was not conducting horse races—a period which petitioner calls its "dormant" period. Respondent contends to the contrary. He admits, however, that the interest payments were abnormal in amount under subparagraph (J) (ii) and has determined the deficiencies accordingly.

In support of its position, petitioner relies on *Green Bay Lumber Co.*, 3 T. C. 824. Respondent, on the other hand, relies on *Arrow-Hart & Hegeman Electric Co.*, 7 T. C. 1350. Both cases were reviewed by the full Court.

In the *Green Bay* case, this Court said that Congress did not intend that the classification of deductions under section 711 (b) (1) (J) should follow the pattern established by section 23 of the code, and that bad debts do not necessarily all fall in the same class. There it was held that a bad debt arising out of loans made to the taxpayer's employees for the purpose of purchasing stock in another corporation was of a different class from bad debts arising from trade accounts; that the former was abnormal by class and should be disallowed *in toto*.

In the *Arrow-Hart* case, issue 6, the question was presented whether interest paid on a sum of a million dollars borrowed by the taxpayer for the purpose of retiring its preferred stock was of a class different from interest paid on moneys borrowed for current operations. It was held that the interest on the note was of the same class as the interest on the current operation loans.

It is thus apparent that the *Arrow-Hart* case was a direct ruling on the question of interest deduction, the same question involved here, whereas the *Green Bay* case was concerned only with the question of bad debts. However, even if it may be said that any conflict in principle exists between the two cases, the *Arrow-Hart* case must be taken as the later expression by the full Court on the matter. If, as in that case, interest on money borrowed for the retirement of preferred stock was not of a class different from interest on money borrowed for current operations, then we do not see how it could be said that in this case interest on money borrowed to cover net losses during the so-called "dormant" period is of a class different from the other interest paid by petitioner as shown in our findings. On the authority of the *Arrow-Hart* case, therefore, we conclude that the respondent did not err in holding that the interest deductions were abnormal only in amount and not by class.

*Decision will be entered for the respondent.*